Newton, County Judge, *v.* Edwards.

4-6611                                   155 S. W. 2d 591

Opinion delivered November 10, 1941.

*Sam Robinson* and *Byron R. Bogard,* for appellant.

*Miles & Amsler,* for appellee.

*P. A. Lasley, Walter G. Riddick* and *R. W. Robins,* amici curiae.

MEHAFFY, J. This appeal involves the question of the constitutionality of act 342 of the General Assembly of 1941. The title of the act is: "An act to provide for the more efficient collection of delinquent personal taxes; to provide for the appointment of delinquent tax collectors; fixing their compensation; and for other purposes."

The act provides in § 1: "The county judge, the mayor of the municipality that is the county seat, and in those counties having more than one county seat the mayors of the municipalities of both county seats, and the chief county school officer of each of the counties of this state are hereby constituted a board to be known as the 'Delinquent Tax Board.' It shall be the duty of said board to appoint a collector, or collectors of delinquent personal taxes for its respective county and to supervise and direct the collector, or collectors, appointed by them.

The board members shall receive no compensation or expenses for or incident to the discharge of their duties. The board shall meet upon the call of the chairman. The county judge shall be the chairman of the board.''

The appellee, L. J. Edwards, brought suit in the Pulaski chancery court to restrain and enjoin the appellants, C. P. Newton, as county judge of Pulaski county, Arkansas, Charles E. Moyer, as mayor of the city of Little Rock, Arkansas, and N. M. Hamilton, as county examiner for Pulaski county, Arkansas, from appointing a delinquent personal tax collector under the provisions of act 342. Appellee alleged that he was a resident and citizen of Little Rock and brings this suit in behalf of himself and all other taxpayers of Arkansas. Appellee alleges that act 342 is unconstitutional; that it is in violation of §§ 1 and 2 of art. 4 of the Constitution.

Section 1 of art. 4 reads as follows: ''The powers of the government of the state of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to-wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.''

Section 2 of said article reads as follows: ''No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.''

Appellee also alleges that said act is in conflict with § 46 of art. 7 of the Constitution, which reads as follows: ''The qualified electors of each county shall elect one sheriff, who shall be ex-officio collector of taxes, unless otherwise provided by law; one assessor, one coroner, one treasurer, who shall be ex-officio treasurer of the common school fund of the county, and one county surveyor, for the term of two years, with such duties as are now or may be prescribed by law. Provided that no per centum shall ever be paid to assessors upon the valuation or assessment of property by them.''

Appellee alleged that the board is now preparing to appoint delinquent tax collectors under the provisions

of said act; that said appointment, if made, will be without authority of law, and void.

The appellants filed their demurrer to the complaint, which states: first, that the court has no jurisdiction of the person of the defendants or the subject of the action; second, that the plaintiff has no legal capacity to sue; third, that the complaint does not state facts sufficient to constitute a cause of action.

The court overruled the demurrer of the defendants, and they refused to plead further, but elected to stand on their demurrer, and the court found that act 342 of the Acts of 1941 is unconstitutional and against public policy, and therefore void. The chancery court enjoined and restrained appellants from electing a collector or collectors under said act. To reverse said decree, this appeal is prosecuted.

The appellee contends that act 342 is unconstitutional for the following reasons:

"1. The county judge is a judicial officer. The appointment of a collector of delinquent personal taxes, when appointed, is an executive officer. It is unlawful to combine two of the state departments in one authority.

"2. The act puts the county judge in a dual position of passing on assessment appeals and then appointing a collector to collect the taxes.

"3. Under the constitution the sheriff is ex-officio collector, and the office is elective.

"4. It is against public policy to subdivide the collector's office.

"5. Who constitutes the 'Chief School Authority'?

"6. The legislature cannot delegate to a municipal officer power to act beyond the limits of the municipality."

In volume 1, Cooley's Constitutional Limitations, p. 175, it is said: "There are two fundamental rules by which we may measure the extent of the legislative authority in the states:

"1. In creating a legislative department and conferring upon it the legislative power, the people must be understood to have conferred the full and complete power as it rests in, and may be exercised by, the sovereign power to any country; subject only to such re-

strictions as they may have seen fit to impose, and to the limitations which are contained in the Constitution of the United States. The legislative department is not made a special agency for the exercise of specifically defined legislative powers, but is intrusted with the general authority to make laws at discretion.''

In 25 R. C. L., 1000, the following rule is stated: ''When the constitutionality of a statute is questioned it is the duty of the courts, and also a rule of construction, to adopt such construction as will make the statute constitutional if its language will permit. There is a strong presumption in favor of the validity and constitutionality of an act, and courts should not declare acts of the legislature unconstitutional unless satisfied of their unconstitutionality beyond a reasonable doubt.''

Appellee cites and relies on the case of *Oates* v. *Rogers,* 201 Ark. 335, 144 S. W. 2d 457. There is nothing in that case, we think, that tends to support the contention of appellee. The court said in that case: ''In the Falconer-Shores case (37 Ark. 386) there is this statement: 'Doubtless the legislature has power to provide by law for collectors to be appointed by the governor, or in such other mode as may be directed.'

''The point decided was not that the general assembly could delegate to judicial officers the power to appoint executive officers, but, rather, that the lawmaking body was authorized to provide by law for the collector to be appointed by the governor, 'or in such other mode as may be directed'.''

In the case of *Hays* v. *McDaniel, State Treasurer,* 130 Ark. 52, 196 S. W. 934, where the act to borrow money to cover deficiencies in the state's general revenue fund was construed, the court said: ''The Constitution is not a grant of power to the state, and we are not required to look to the Constitution for authority for legislative action. The state, acting through the legislature, may borrow money for its own uses unless that right is denied by the Constitution and the only inhibition against the state there contained, in this respect, is that it shall not issue any interest-bearing treasury warrants or scrip.''

In the case of *Hutton, Collector,* v. *King,* 134 Ark. 463, 205 S. W. 296, the court said: ''(1) It is a well established principle that a constitutional provision merely creating an office does not amount to a prohibition against legislative action varying the duties of that office. The rule is stated by Mr. Throop to be that: 'Unless the constitution otherwise expressly provides, the legislature has power to increase or vary the duties, or diminish the salary or other compensation appurtenant to the office.' Throop on Public Officers, § 19. That rule has been adopted and subsequently followed by this court. *State* v. *McDiarmid,* 27 Ark. 176; *Board of Equalization Cases, supra; Cain* v. *Woodruff County,* 89 Ark. 456, 117 S. W. 768.''

The Constitution not being a grant, but a limitation of power, the court should, in all cases, uphold a statute unless there is an express or necessarily implied limitation of the legislative power by the Constitution. It is always presumed that the act is valid, and it will be upheld unless it is clearly prohibited by the Constitution, and where it is doubtful whether an act comes within the inhibition of the Constitution, the doubt must be resolved in favor of the constitutionality of the act.

In the case of *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9, this court said: '' 'It is not to be doubted that the legislature has the power to make the written laws of the state, unless it is expressly, or by necessary implication, prohibited from so doing by the Constitution, and the act assailed must be plainly at variance with the Constitution before the court will so declare it.' Second, that an act of the legislature is presumed to be constitutional, and will not be held by the courts to be unconstitutional unless there is a clear incompatibility between the act and the Constitution; and further, that all doubt on the question must be resolved in favor of the act.''

The court stated in the case of *Oates* v. *Rogers, supra,* that a statute is not invalid as improperly conferring executive power where the actual power of the executive department is not really diminished. There is no contention in this case that the powers of these officers, as such, are in any way diminished.

It is contended, however, by appellee that the county judge is a judicial officer. He refers again to the Oates case in which this court said: "Duties of a county judge, primarily, are ministerial. As was said in *Nixon* v. *Allen,* 150 Ark. 244, 234 S. W. 45, 'The county judge is the *governor,* so to speak, in the affairs of the county'."

It is contended that act 342 is void because it separates the taxes to be collected; that is, it provides that the collector appointed by the delinquent tax board shall collect delinquent personal taxes only, leaving all other taxes to be collected by the sheriff, who is ex-officio tax collector. This would not make the law invalid.

In 1881 the legislature passed the "Over-due Tax law," providing for suits to be brought by persons other than the tax collector to enforce the payment of overdue taxes, which law was held valid and constitutional. Since that time the legislature has, on two or three occasions, passed back-tax laws providing that the back taxes should be collected by persons other than the tax collector. Those statutes have been held by this court to be constitutional.

It is next contended by appellee that the act is void because it violates § 46 of art. 7 of the Constitution. This section provides that the qualified electors of each county shall elect a sheriff who shall be ex-officio collector of taxes, unless otherwise provided by law. The act under consideration is not in conflict with this provision of the Constitution.

The Constitution leaves the office of collector under the control of the legislature. *Vaughan* v. *Kendall,* 79 Ark. 584, 96 S. W. 140. In that case Chief Justice HILL said, in discussing this provision of the Constitution: "The natural meaning to be attached to this is that the sheriff shall be collector until the legislature otherwise provides."

It is also contended by appellee that the act is against public policy. The Supreme Court of the United States said in the case of *Twin-City Pipe Line Co.* v. *Harding Glass Co.,* 283 U. S. 353, 51 S. Ct. 476, 75 L. Ed. 1112, 83 A. L. R. 1168: "The meaning of the phrase 'public policy' is vague and variable; courts have not

defined it and there is no fixed rule by which to determine what contracts are repugnant to it. . . .

"In determining whether the contract here in question contravenes the public policy of Arkansas, the Constitution, laws and judicial decisions of that state and as well the applicable principles of the common law are to be considered. Primarily it is for the lawmakers to determine the public policy of the state."

Apparently the purpose of act 342 is to collect taxes that are due and cannot be collected in the ordinary way. We think it wholly immaterial whether the delinquent taxes could not be collected by the tax collector, or whether he through favoritism, failed or refused to collect them. In either event, the state, county, school districts, and municipalities, would be deprived of a great portion of the taxes that should be collected. The legislature evidently thought that if a separate collector was appointed for the sole purpose of collecting delinquent personal taxes, much more money would be derived than under the present system.

There is nothing in this act that violates any provision of the Constitution. The decree is, therefore, reversed and remanded with directions to sustain the demurrer, hold the act valid, and dismiss appellee's complaint.

GRIFFIN SMITH, C. J. (dissenting). The majority opinion correctly says that the only question is whether Act 342, approved March 26, 1941, is violative of the Constitution. I think it is.

The general assembly has the right to separate the office of collector from that of sheriff; but, when so severed, and before, the collector's office is a constitutional one and may not be rent for distribution among a possible 2,800 appointees.[1]

That the status of the collector as a constitutional officer remains after the office has been severed was decided in *Oates* v. *Rogers*, 201 Ark. 335, 144 S. W. 2d 457.

[1] As of June 30, 1941, (latest compilation) there were 2,799 school districts in the state. Add to 2,799 the number of wards in cities of more than 25,000, and school districts partly in one county and partly in another.

It was there said that § 46, art. 7, of the constitution, as it affects sheriffs, had been construed to provide for a two-year term. In the opinion it was said: ''By reference to the section . . . it will be seen that the expression 'for the term of two years' follows words which confer upon the general assembly power to create the separate office of collector. It must be held, therefore, that the collector's term could be for but two years, as distinguished from the five-year period stated in Act 137'' of 1939.

*Marshall* v. *Holland,* 168 Ark. 449, 270 S. W. 609, held that the collector's office could not be taken from the sheriff's office and the duties conferred upon a county treasurer. But the opinion, written by Chief Justice Mc-Culloch for an undivided court, went further. It held that ''the position of tax collector is a separate office,'' and ''The offices of sheriff, collector, treasurer, and certain other county officers are all embraced in § 46, art. 7, *and this necessarily groups them as officers in the same department.*'' Again, in discussing authority conferred by the constitution, it was said: ''Placing the collector's office under legislative control does not imply authority to annex it to another office, for to do so would bring it in conflict with the other provisions of the constitution prohibiting dual office holding.''

There is this further holding: ''. . . Nor can it be said that the mere fact that the office of tax collector is referred to in art. 7, § 46, forces the conclusion that the lawmakers may continue to treat it as an *ex officio* office and annex it to another office.''

Attention is directed to the particular words used by Judge McCulloch. He speaks of the ''offices'' of sheriff, collector, etc. Then, in respect of the constitutional grouping, he refers to the incumbents as ''officers.'' First, the ''offices'' are mentioned; and then, when separated, they are to be occupied by ''officers'' —a sheriff and a collector for each county.

Act 342 vests discretion in the delinquent tax board to select two or more collectors ''. . . and to divide the territory of the county into districts and appoint a

collector for each district; provided, that in dividing the county into districts the board may not divide school districts unless a school district includes territory in two counties; and provided further, that in cities of more than 25,000 population the board may appoint a collector for one or more wards of such cities.''

Not only may a collector be appointed for each school district, but where a district lies partly in one county and partly in another, a collector may be appointed for each fraction; such area, within the terms of the Act, being susceptible of designation as a district.

If the general assembly may parcel collection of delinquent personal taxes, it may likewise parcel other taxes; or it may designate that any function of the collector's office be assigned to a board, commission, or receivers generally.

I think the construction given by the majority loses sight of the perplexities created, and that it attributes to those who framed the constitution and the people who adopted it a plan not even vaguely contemplated. The construction seems to be founded more upon expediency, or what is termed necessity for more thorough collection, than upon practical analysis. There will be repercussions distasteful in the extreme. It may be answered that the legislature declares the state's public policy. The reply is that it does, *within* the constitution.

We now have a situation whereby the sheriff, as *ex officio* collector in those counties where severance has not been enacted, and the collector, in those counties where the general assembly has caused separation, is required to execute bond on or before the first Monday in January each year. Pope's Digest, §§ 13775-76-77, as amended by Act 85 of 1927; Act 198 of 1929, and Act 329 of 1937. Amount of the bond is determined by a board composed of the attorney general, auditor of state, and treasurer of state, ''. . . in accordance with the degree of responsibility,'' not to exceed 25 per cent. of the amount of money handled. Pope's Digest, §§ 10440-41.

Under Act 342 the delinquent tax board for each county meets immediately after the last publication of

the delinquent personal tax list and appoints collectors. Publication of the delinquent personal list is directed by § 13834 of Pope's Digest. Payment for publication is on the basis of ten cents per name, ". . . which sum, together with five cents per name for the collector preparing and furnishing the list, shall be charged to the delinquent taxpayer, and shall be paid by the collector from any moneys in his hands derived from payment of personal property taxes." But by § 6 of Act 342 the delinquent tax collectors make settlement with the county clerk rather than with the regular collector. The constitutional collector must pay into the county treasury on the first and fifteenth of each month "and within two days thereafter" all funds in his hands belonging to the county. Pope's Digest, § 13905. Under § 13834 the county is not required to pay publication fees, and the newly-created delinquent tax board cannot function until publication has been completed. Inasmuch as the constitutional collector does not receive funds from his appointed co-collectors, it is difficult to see how payment for publication can be legally made. This is a mere detail and does not affect validity of the Act; but it does illustrate what may occur when fundamental moorings are severed.

The essential consideration is that a constitutional office has been vivisected and its parts widely scattered.

Mr. Justice McHaney joins in this dissent.