BERRY *v.* GORDON.

5-3045                                              376 S. W. 2d 279

Opinion delivered January 20, 1964.

548

*Macon & Moorehead, Garner, Shaw & Kimbrough,* for appellant.

*Catlett & Henderson, Bruce Bennett,* Atty. General, *Mehaffy, Smith, Williams, Friday & Bowen,* By *Wm. J. Smith* and *Geo. E. Pike, Jr.* for appellee.

BOYD TACKETT, Special Justice. Appellant William M. (Bill) Berry is a citizen and taxpayer of the State of Arkansas. At the time the Chancery Court action was instituted and when the cause was concluded in the trial court, Appellee Nathan Gordon was Lieutenant Governor of the State of Arkansas, Appellee L. A. Clayton, was Treasurer of the State of Arkansas, and Appellee John P. Bethel was Speaker of the House of the Arkansas State Legislature.

Appellant petitioned the Chancery Court of Pulaski County, Arkansas, in a taxpayer action, under Article XVI, Section 13, of the Constitution of the State of Arkansas, to enjoin and restrain appellees from paying out or receving public funds over and above their regular salaries—challenging the Constitutionality of Act 399 of the Arkansas Legislative Acts of 1961—and seeking an account of public funds paid out or received by appellees over and above their regular salaries.

The parties stipulated that appellees paid out or received payments under Act 399 of the Arkansas Legislative Acts of 1961, and that expenses authorized by other legislation had been paid out and received by one or more of the appellees. Appellant and appellees moved for a Summary Judgment in the case. The matter was submitted to the trial court upon the pleadings, depositions, stipulations, and briefs of the parties. The Chancellor granted the Motion of Appellees for Summary Judgment and dismissed the Complaint of appellant upon the grounds that Act 399 of the Arkansas Legislative Acts of 1961 was not unconstitutional on its face, and that appellant had failed to introduce any evidence to show that the amounts received were unreasonable, arbitrary, used for unofficial purposes, or that the payments constituted an increase in salary rather than reim-

bursement or payment of expenses legally incurred—
thus, this appeal.

The title of Act 399 of the Arkansas Legislative Acts
of 1961 reads as follows: ''An Act to Make an Appropri-
ation to Defray Expenses in Connection with Public
Relations Activities of Certain Constitutional Officers of
the Executive Department of the State of Arkansas.''
SECTION 1 of the Act concerns the alleged need of some
state officials to receive funds for public relations pur-
poses, arising from the necessity of maintaining satis-
factory public relations with official guests from neigh-
boring states and the Federal Government. The Act
declares as its purpose the promotion of the common
good of the State of Arkansas by providing funds which
will enable the state officials to continue beneficial public
relations activities without personal financial hardship.
SECTION 2 of the Act appropriates funds—payable
from the Constitutional and Fiscal Agencies Fund—to
defray expenses in connection with public relations of
the following Constitutional Officers of the Executive
Department the sum of One Thousand Eight Hundred
(1,800) Dollars each for the fiscal year 1961-1962, and
the sum of $1,800 each for the fiscal year 1962-1963:
Lieutenant Governor, Secretary of State, Treasurer of
State, Auditor of State, Attorney General, Land Com-
missioner, and Speaker of the House. SECTION 3 of the
Act provides that, on the 1st day of each calendar month
in each of the foregoing fiscal years, the Auditor of
State shall issue a warrant drawn in favor of each of the
named officials in the amount of one-twelfth of the
appropriation allocated to each such official, authorizing
and directing the State Treasurer to pay said warrants
from funds appropriated. SECTION 4 of the Act repeals
all laws and parts of laws in conflict with Act 399.

Appellant insists that Act 399 is in conflict with
Amendment 5 and Section 6 of Amendment 6 of the Con-
stitution of the State of Arkansas. Amendment 5 of the
Arkansas Constitution provides that each Member of
the General Assembly receive a designated sum per day
during the first sixty days of any regular session of the

State Legislature, a designated sum per day during the first fifteen days of an extraordinary session of the Legislature, and expenses for travel to and from the Seat of Government to attend regular and extraordinary sessions. The Amendment further provides that the terms of all Members of the General Assembly begin on the day of their election, and that they shall receive no compensation, perquisite, or allowance whatever, except as provided by the Amendment. Section 6 of Amendment 6 of the Arkansas Constitution provides that the Lieutenant Governor shall receive for his services an annual salary of Two Thousand (2,000) Dollars, and shall not receive or be entitled to any other compensation, fee or perquisite for any duty or service he may be required to perform by the Constitution or by law.

Concerning salary and expense entitlements of the Speaker of the House, we need to ascertain any changes made to Amendment 5 of the Arkansas Constitution by subsequent Amendments of our Constitution. Amendment 15 of the Arkansas Constitution provides for annual salaries to certain State and District officers, payable in monthly installments, and provides for salaries and expenses of the General Assembly Membership. Paragraph 3 of Amendment 15 provides that each Member of the General Assembly receive a designated sum each two-year period, the designated salary of the Speaker of the House of Representatives being one hundred dollars more each two-year period than the salary of the other Members of the General Asembly; provides an additional designated sum per day for Members of the General Assembly, including the Speaker, that they be required to attend an extraordinary session; and provides travel expenses to and from the Seat of Government to attend the regular and extraordinary sessions of the General Assembly. Amendment 15 repealed provisions of the Constitution of the State of Arkansas in conflict with the Amendment; and this Amendment does not contain a clause precluding the Speaker of the House or other Members of the General Assembly from receiving additional expenses.

Next we have Section 3 of Amendment 37 of the Arkansas Constitution, providing that each Member of the General Assembly receive a designated salary for each two-year period, the designated salary of the Speaker of the House of Representatives being One Hundred Fifty (150) Dollars more each two-year period than the salary of the other Members of the General Assembly; providing an additional designated sum per day for Members of the General Assembly, including the Speaker, that they be required to attend an extraordinary session; and providing expenses for travel to and from the Seat of Government to attend regular and extraordinary sessions of the General Assembly. Amendment 37 repealed all provisions of the Constitution of the State of Arkansas in conflict with the Amendment; and this Amendment does not contain a clause precluding the Speaker of the House or other Members of the General Assembly from receiving additional expenses.

Further concerning entitlements of the Speaker of the House, Amendment 48 of the Arkansas Constitution —the current Constitutional authority at the involved time—provides that each Member of the General Assembly receive a designated salary per annum, the designated annual salary of the Speaker of the House being One Hundred Fifty (150) Dollars more than the designated salary of the other Members of the General Assembly; provides an additional designated sum per day for Members of the General Assembly that the General Assembly be in regular session; provides an additional designated sum per day for Members of the General Assembly that they be required to attend an extraordinary session; and provides expenses for travel to and from the Seat of Government to attend regular and extraordinary sessions of the General Assembly. Amendment 48 repealed all provisions of the Constitution of the State of Arkansas in conflict with the Amendment; and this Amendment does not contain a clause precluding the Speaker of the House or other Members of the General Assembly from receiving additional expenses.

Concerning salary and expense entitlements of the Lieutenant Governor, we need ascertain any changes made to Section 6 of Amendment 6 of the Arkansas Constitution by any subsequent Amendments of our Constitution. Section 2 of Amendment 37 of the Arkansas Constitution—the current Constitutional authority at the involved time—provides annual salaries for officers of the executive department of the State of Arkansas, payable in monthly installments, including the annual salary of the Lieutenant Governor in the amount of $2,500. As beforementioned, Amendment 37 repealed all provisions of the Constitution of the State of Arkansas in conflict with the Amendment; and this Amendment does not contain a clause precluding the Lieutenant Governor from receiving additional expenses.

Concerning salary and expense entitlements of the State Treasurer, we need ascertain pertinent provisions of the Arkansas Constitution. (Appellant does not question by this litigation the entitlements of the other state officials named in Act 399 of the Arkansas Legislative Acts of 1961—Secretary of State, Auditor of State, Attorney General, or Land Commissioner—to receive expenses in addition to their salaries.) It should be noted that Section 23 of Article 19 of our Constitution provides that no officer of the state, nor any county, city, or town, shall receive, directly or indirectly, for salary, fees, and perquisites, more than $5,000 net profit per annum in par funds, and that any and all sums in excess of this amount shall be paid into the state, county, city, or town treasury, as shall hereafter be directed by appropriate legislation.

Constitutional Amendment 15, repealing Constitutional provisions in conflict, concerning salaries to most state officers, the Circuit Judges, the Chancellors, and Members of the General Assembly, afforded the Governor a salary of more than $5,000 per year, and provided fixed salaries for other state officers, Circuit Judges, Chancellors, and Members of the General Assembly.

It should further be noted that Constitutional Amendment 37 provides annual salaries to state officials

as follows: Governor-$10,000, Lieutenant Governor-$2,500, Secretary of State-$5,000, Treasurer of State-$5,000, Auditor of State-$5,000, Attorney General-$6,000, and Commissioner of Lands-$5,000; provides salaries and expenses to Members of the General Assembly as hereinbefore noted, and provides annual salaries and expenses for Circuit Judges and Chancellors a sum of not less than $4,800 nor more than $7,200.

We must determine (1) whether the provision of Constitutional Amendment 5 precluding the Speaker of the House from receiving compensation, perquisites, or allowance, in addition to his entitlements under current Constitutional provisions in effect, has been repealed or continues in force; (2) whether the provision of Section 6 of Constitutional Amendment 6 precluding the Lieutenant Governor from receiving compensation, fee, or perquisite, in addition to his entitlements, under the current Constitutional provisions in effect, has been repealed or continues in force; and (3) whether the current Constitutional provisions in effect preclude the Treasurer of State from receiving public relations or other expenses in addition to his salary entitlements.

The two familiar rules or classifications applicable in determining whether or not provisions of the Constitution have been repealed are set forth in the case of *Babb* v. *El Dorado,* 170 Ark. 10, 278 S. W. 649:

"One is that, where the provisions of two statutes are in irreconcilable conflict with each other, there is an implied repeal by the latter one which governs the subject matter so far as relates to the conflicting provisions, and to that extent only.

"The other one is that a repeal by implication is accomplished where the Legislature takes up the whole subject anew and covers the entire ground of the subject matter of a former statute and evidently intends it as a substitute, although there may be in the old law provisions not embraced in the new.

"Where there are two Acts on the same subject, the rule is to give effect to both, if possible, but, if the two

are repugnant in any of their provisions, the latter Act, without any repealing clauses, operates to the extent of the repugnancy as a repeal of the first; and, even where two acts are not in express terms repugnant, yet, if the latter Act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first Act, it will operate as a repeal of that Act.''

The rules of construction governing Constitutional Amendments are the same as the rules governing the construction of statutes—*Bailey* v. *Abington,* 201 Ark. 1072, 148 S. W. 2d 176. It is a rule of universal application that the Constitution must be considered as a whole, and that, to get at the meaning of any part of it, we must read it in the light of other provisions relating to the same subject. *Chesshir* v. *Copeland,* 182 Ark. 425, 32 S. W. 2d 301. The Constitution is to be construed according to the sense of the terms used and the intention of its authors. *Rankin* v. *Jones,* 224 Ark. 1001, 278 S. W. 2d 646.

Upon applying these applicable rules to determine whether the early Constitutional provisions have been repealed, considering all of the Constitutional provisions and Amendments as a whole, it is clear, *concerning expense entitlements of the Speaker of the House,* that Paragraph 3 of Constitutional Amendment 15 repealed Constitutional Amendment 5, except the beginning date of terms of Members of the General Assembly, which was repealed by Section 6 of Constitutional Amendment 23; that Section 3 of Constitutional Amendment 37 repealed Paragraph 3 of Constitutional Amendment 15; and that Constitutional Amendment 48 repealed Section 3 of Constitutional Amendment 37. Constitutional Amendment 48 is full and complete and covers the pertinent subject matter of Constitutional Amendment 5, Paragraph 3 of Constitutional Amendment 15, and Section 3 of Constitutional Amendment 37. It embraces new provisions, plainly showing that it was intended as a substitute for the former pertinent Constitutional Amendments. There were three Constitutional Amend-

ments covering the subject matter of Constitutional Amendment 5 from 1913 until the adoption of Constitutional Amendment 48 in 1958—a period of 45 years—and had there been a desire to continue the pertinent prohibition contained in Constitutional Amendment 5, same would have been included in these Constitutional Amendments.

Applying these applicable rules, it is clear, *concerning expense entitlements of the Lieutenant Governor*, that Section 2 of Constitutional Amendment 37 fully and completely covers the provisions of Section 6 of Constitutional Amendment 6, and replaces and repeals such Constitutional provisions. Constitutional Amendment 6 was adopted in 1914. Thirty-two years later, the same subject matter of Section 6 thereof was covered by Section 2 of the Constitutional Amendment 37; and, had there been an intent to continue the involved prohibition in effect, same would have been included in the latter Constitutional Amendment, as did Section 3 of Constitutional Amendment 37 cover expense entitlements of Circuit Judges and Chancellors. Subsequent to the adoption of Section 6 of Constitutional Amendment 6 and prior to the adoption of Section 2 of Constitutional Amendment 37, our Supreme Court decided the case of *Ashton* v. *Ferguson*, 164 Ark. 254, 261 S. W. 624, which invalidated certain expense payments because of the prohibition of Constitutional Amendment 5. Thereafter, Section 2 of Constitutional Amendment 37 was adopted, removing the restrictions upon the payment of expenses to the Lieutenant Governor.

Further applying these applicable rules, it is clear, *concerning expense entitlements of the Treasurer of State*, that Section 23 of Article 19 of the Constitution of the State of Arkansas, precluding state officers from receiving salary, fees, and perquisites, of more than $5,000 per year, was modified by Constitutional Amendment 15, and was definitely repealed, concerning entitlements of the executive officers of the state, by Section 2 of Constitutional Amendment 37. The entire subject of Section 23 of Article 19 of the State Constitution and

Constitutional Amendment 15, concerning entitlements of the executive officers, is fully covered and repealed by Constitutional Amendment 37.

Our state Constitution is not a grant of power, but constitutes a limitation, and, if there be no limitation of power, impliedly or specifically expressed, the Legislature, in the exercise of its sovereign right, may authorize such appropriations as it deems necessary. *Newton* v. *Edwards,* 203 Ark. 18, 155 S. W. 2d 591; *Smart* v. *Gates,* 234 Ark. 858, 355 S. W. 2d 184; *Hooker* v. *Parker,* 235 Ark. 218, 357 S. W. 2d 534. Courts are without jurisdiction to review the discretion of the Legislature in the exercise of the power it possesses *Russell* v. *Cone,* 168 Ark. 989, 272 S. W. 678.

There is no Constitutional prohibition precluding the Lieutenant Governor, the Secretary of State, the Treasurer of State, the Auditor of State, the Attorney General, or the Land Commissioner, from receiving expenses for the purposes set forth in Act 399 in addition to their authorized salaries; and the Speaker of the House is not prohibited from receiving expenses in addition to his entitlements enumerated in Constitutional Amendment 48. Act 399 of the Arkansas Legislative Acts of 1961, with the omission of Paragraph 3 thereof, is not unconstitutional, and the discretion exercised by the Legislature in this instance should not concern this court.

The cases of *Tipton* v. *Parker,* 71 Ark. 193, 74 S. W. 298; *Dickinson* v. *Johnson,* 117 Ark. 582, 176 S. W. 116; and *Ashton* v. *Ferguson,* supra, which appellant insists control this case, lend no assistance. All three cases were decided prior to the adoption of the Constitutional Amendments repealing the provisions of Constitutional Amendment 5 and Section 6 of Constitutional Amendment 6 precluding the Speaker of the House and the Lieutenant Governor from receiving expenses. The Tipton case merely held that the Senate had no authority under a Senate Resolution, not concurred in by the House, to extend powers and duties of a Senate Committee beyond duration of the legislative session and to fix compensation of members of the committee. The

Dickinson case held that the Legislature, by concurrent resolutions, could not authorize investigating committees to perform duties beyond the duration of the legislative session, and afford compensation and expenses to the committee membership; that such legislative authorization would have required the enactment of a Bill. The Ashton case simply ruled that Members of the Legislature were not entitled to allowances prohibited by the Constitutional provisions in effect at that time. Those Constitutional provisions have been repealed.

The cases of *White* v. *Williams,* 187 Ark. 113, 59 S. W. 2d 23, and *Griffin* v. *Rhoton,* 85 Ark. 89, 107 S. W. 380, cited by appellant, offer no assistance because those cases concern a Sheriff and a Prosecuting Attorney receiving funds prohibited by Section 23 of Constitutional Article 19, which Constitutional prohibition is not involved in this instance. Because Section 4 of Constitutional Amendment 37 limits Circuit Judges and Chancellors to salary and expenses of not more than $7,200 per year, the case of *Gipson* v. *Maner,* 225 Ark. 976, 287 S. W. 2d 467, cited by appellant, is not in point for the reason that the current Constitutional Amendments in effect do not prohibit the Speaker of the House, the Lieutenant Governor, and the Treasurer of State from receiving expenses in addition to their salaries.

We must be concerned with whether the Speaker of the House is entitled to public relations expenditures in light of the title of Act 399 announcing the Act as an appropriation to defray public relations expenses of Constitutional Officers, and in view of Section 2 of the Act which appropriates expenses of certain Constitutional Officers of the Executive Department, including the Speaker of the House. Of course, the Speaker of the House is not a Constitutional officer and is not a member of the Executive Department. While the title of an Act may be considered in arriving at the legislative intent, it is no part of the Act and is not controlling in its construction. *Glover* v. *Henry,* 231 Ark. 111, 328 S. W. 2d 382. The drafters of the Act erroneously referred to the Speaker of the House in the caption and in Section

2 thereof as a Member of the Executive Department. However, that error does not affect the status of the Speaker of the House as a Member of the General Assembly, and in no manner affects the issue of whether the State Officials set forth in Act 399 are entitled to public relations expenditures. *Bailey, Lieutenant Governor* v. *Abington,* 201 Ark. 1072, 148 S. W. 2d 176.

Any fair construction of Act 399 of the Legislative Acts of 1961 leads us to the conclusion that the Legislature intended to afford reimbursement of public relations expenditures incurred by certain state officials, as provided in Section 1 of the Act. Section 3 would authorize monthly payments of public relations expenditures by the state officers whether or not they had incurred such expenditures. Therefore, we conclude that Section 3 of Act 399 must be stricken. Otherwise, such reimbursement would violate our Constitution. In view of the expressed intent of the Legislature to provide these state officials with limited public relations expenditures, the officials are not entitled to reimbursement of expenditures not expended. That Section, when severed, does not affect the intent of the Legislature. Every presumption must be indulged in favor of the constitutionality of an Act of the Legislature. *Beaty* v. *Humphrey,* 195 Ark. 1008, 115 S. W. 2d 295.

In the case of *Bailey* v. *Abington,* supra, this Court held that in construing legislation and Constitutional provisions, it is the duty of the courts to ascertain and give effect to the intent of the framers and to the people who adopted it, even though the true intention, though obvious, has not been expressed by the language employed when given its literal meaning; that the courts are confined to the real purpose and intention of the language rather than to the literal verbiage employed; that the reason, spirit, and intention of the legislation or Constitutional provision shall prevail over its letter; that this rule of construction is especially applicable where adherence to the letter would result in absurdity or injustice, or would lead to contradiction, or would defeat the plain purpose of the law; and that to afford

such construction, courts must restrict, modify, enlarge, and/or transpose the expressed terms.

We note that Act 399 of the Arkansas Legislative Acts of 1961 has expired. The evidence does not reveal whether the public officials spent more or less for public relations than allowed them by Act 399. While the officials afforded public relations expenditures by virtue of Act 399 are not entitled to reimbursement of expenditures not expended, they are not required to make an accounting at this time because the Attorney General, on the 8th day of June, 1953, issued an Opinion to the Auditor of State, concerning Act 467 of the Arkansas Legislative Acts of 1953—the same legislation as Act 399 of 1961, except that the Speaker of the House was not named in the former Act as an officer entitled to public relations expenditures. Section 3 of each Act being word for word the same—wherein the Attorney General advised the Auditor of the State that the legislation constituted no Constitutional objection and that it was the duty of the Auditor of State to comply with the Act. There has been no other Attorney General Opinion or court determination contrary to the Attorney General's Opinion of 1953. The Attorney General's Opinion relieves appellees from the burden of making an accounting. *State* v. *Fidelity & Deposit Company of Maryland*, 187 Ark. 4, 58 S. W. 2d 696; *State, ex rel. Attorney General* v. *Broadway*, 192 Ark. 634; *State ex rel. Smith* v. *Leonard*, 192 Ark. 834, 95 S. W. 2d 86. Then, too, there is nothing in the record remotely indicating that either appellee has acted in the premises except with honesty and sincerity.

The Decree of the Pulaski County Chancery Court is affirmed, subject to modification severing Section 3 of Act 399 of the Arkansas Legislative Acts of 1961; and this cause is remanded with directions that the Chancellor modify his Decree by striking Section 3 of Act 399.

HOLT, J., not participating.

(Supplemental opinion on denial of petition for rehearing delivered March 23, 1964, p. 865.)