The Honorable Sue Madison State Representative 573 Rock Cliff Road Fayetteville, AR 72701-3809
Dear Representative Madison:
This is in response to your request for an opinion concerning Act 1140 of 1997, which governs appointments to the Board of Trustees of the University of Arkansas. It is my understanding from your letter that two members of the current board reside in the First Congressional District, three members reside in the Second Congressional District, three members reside in the Third Congressional District, and two members reside in the Fourth Congressional District.[1] You further state that Mr. Bart Lindsey's term will expire in 1998, and he is from the First Congressional District. In light of these facts, you have requested an opinion on the following two questions:
 1. Does Act 1140 mandate from which district the next appointment will be made?
 2. When the next position expires in 1999, what stipulations does Act 1140 place on that appointment?
In my opinion, Act 1140 requires that two members of the board must be appointed from each congressional district, and two members must be appointed from the state at large. The two at-large members may not reside in the same congressional district, and they must be alumni of the University of Arkansas. Thus, assuming the current makeup of the board does not change between now and the expiration of Mr. Lindsey's term, it is my opinion that a court would most likely conclude that a resident of the First Congressional District should be appointed to the board. With regard to your second question, it is my understanding that the term of Mr. Lewis Epley, Jr., will expire in 1999, and he is a resident of the Third Congressional District. Assuming that a resident of the First Congressional District is appointed in 1998 to replace Mr. Lindsey and that there are no other changes to the board, it is my opinion that the person appointed to replace Mr. Epley may not be a resident of the Second Congressional District because there will already be three members of the board that reside in that district.
Arkansas Code Annotated § 6-64-201 provides that the Board of Trustees of the University of Arkansas shall consist of ten members, who shall be appointed by the Governor. Act 1140 of 1997 amends § 6-64-201(c) to provide as follows:
 (1) Two (2) members shall be appointed from each of the four (4) congressional districts in existence on January 1, 1997.
 (2) Two (2) members shall be appointed from the state at large and the two (2) at large members shall not reside in the same congressional district.
 The members of the board in office on July 1, 1997, shall continue to serve their regular terms. As terms expire after that date, appointments to the board shall be made in such manner as to assure that as soon as practicable the members of the board will represent the different areas of the state as required by this act. Provided, when the first term expires after July 1, 1997, the person appointed to the position shall be a resident of the Fourth Congressional District.
 (3) In case of an increase or decrease in the number of congressional districts in the state, the number of members appointed from the state at large shall be increased or decreased in a manner to assure equal representation on the board for each congressional district.
 (4) The member or members of the board, if any, appointed from the state at large shall be alumni of the University of Arkansas.
(Emphasis supplied.) With regard to your first question, the determinative issue is the effect of the emphasized language.
Initially, some background information regarding the circumstances surrounding the enactment of Act 1140 will be helpful. It is my understanding that, as of March 1, 1997, two members of the board were residents of the First Congressional District, four members were residents of the Second Congressional District, three members were residents of the Third Congressional District, and only one member was a resident of the Fourth Congressional District. Act 1140 was signed by the Governor on April 7, 1997, and it became effective on August 1, 1997.[2] On June 9, 1997, Governor Huckabee appointed Ned Ray Purtle of Hope to the University of Arkansas Board of Trustees.[3] Mr. Purtle was appointed to fill the unexpired term of Carl Whillock of Little Rock, who resigned from the board. Thus, because Hope is located in the Fourth Congressional District and Little Rock is located in the Second Congressional District, membership on the board is now distributed among the four congressional districts as indicated in your letter: two from the First District, three from the Second District, three from the Third District, and two from the Fourth District.
The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the legislature.Vanderpool v. Fidelity Cas. Ins. Co., 327 Ark. 407, 939 S.W.2d 280
(1997). As a guide in ascertaining legislative intent, the Arkansas Supreme Court often examines the history of the statutes involved, as well as the contemporaneous conditions at the time of their enactment, the consequences of interpretation, and all other matters of common knowledge within the court's jurisdiction. Id. With the foregoing principles in mind, it is my opinion that, in enacting Act 1140, the legislature intended to provide for balanced representation on the board of trustees as soon as practicable. With regard to how the balanced representation should be accomplished, the General Assembly provided that the members of the board in office on July 1, 1997, would continue to serve their regular terms. The General Assembly further provided that as terms expire after July 1, appointments should be made in such a manner as to assure that as soon as practicable the members of the board will represent the different areas of the state; however, the legislature also provided that when the first term expired after July 1, the person appointed shall be a resident of the Fourth Congressional District.
At first glance, it appears that because Mr. Lindsey's term will be the first term to expire after July 1, 1997, the person appointed to the position should be a resident of the Fourth Congressional District. It is, however, my opinion that the legislature did not intend such a result. Again, the legislature intended to provide for balanced representation on the board of trustees as soon as practicable. Because of a resignation and an appointment that occurred after Act 1140 was enacted, but prior to the expiration of any term, the principal purpose of the act has already been accomplished. The members of the board currently represent the different areas of the state as contemplated by Act 1140.
As previously discussed, at the time Act 1140 was enacted, only one member of the board was from the Fourth Congressional District. The legislature, therefore, provided that the first appointment to the board should be from the Fourth District. Act 1140, however, fails to address the possibility that the desired balanced representation might be achieved prior to the expiration of a term. In light of the present makeup of the board, to appoint someone from the Fourth District in 1998 to replace Mr. Lindsey would leave only one member of the board from the First District and three members from each of the other congressional districts. This would be against the overall intent of the act. It is apparent that the legislature did not intend for someone to be appointed from the Fourth District regardless of the fact that the desired balanced representation had already been achieved. Although courts are reluctant to interpret a statute in a manner contrary to its express language, a court will not allow a drafting error to circumvent legislative intent.Citizens to Establish a Reform Party v. Priest, 325 Ark. 257,926 S.W.2d 432 (1996); see also Berry v. Gordon, 237 Ark. 547,376 S.W.2d 279 (1964) (the reason, spirit, and intention of legislation should prevail over its literal meaning, especially where adherence to the letter would result in absurdity or injustice, or would lead to contradiction, or would defeat the plain purpose of the law). A court would be required to abandon common sense in order to allow such an error to dictate a conclusion that is contrary to the clear legislative intent and which defeats the express policy and purpose of the act. See Dollar v. State, 287 Ark. 61,797 S.W.2d 868 (1985). Thus, assuming the current makeup of the board does not change between now and the expiration of Mr. Lindsey's term, it is my opinion that a court would most likely conclude that a resident of the First Congressional District should be appointed to the board.
With regard to your second question, it is my understanding that the term of Mr. Epley, who is from the Third Congressional District, will expire in 1999. Assuming that a resident of the First District is appointed in 1998 to replace Mr. Lindsey and that there are no other changes to the board, two of the remaining members of the board will be from the First District, three will be from the Second District, two will be from the Third District, and two will be from the Fourth District. Although it is unclear which of the remaining members will be considered appointed from a congressional district and which will be considered at-large appointments, pursuant to Act 1140 no more than three members of the board may be from a single congressional district.[4] Thus, the person appointed to replace Mr. Epley may not be a resident of the Second Congressional District. It should also be noted that there might be additional "stipulations" depending upon which members of the board are considered appointed from the state at large; the members appointed from the state at large must be alumni of the University of Arkansas. See
A.C.A. § 6-64-201(c)(4), as amended by Act 1140 of 1997.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] Whether a member of the Board of Trustees is a resident of a certain congressional district is ultimately a question of fact which this office is neither equipped nor empowered to answer. Thus, my answers to your questions may be subject to change if additional facts are presented.
[2] Act 1140 of 1997 did not contain an emergency clause or a specified effective date; therefore, it became effective on August 1, 1997. See
Op. Att'y Gen. 97-144.
[3] See Governor Huckabee's Press Release, June 9, 1997.
[4] Two members must be appointed from each congressional district, and the two at-large members may not reside in the same congressional district.