The Honorable Bobby L. Glover State Senator Post Office Box 1 Carlisle, Arkansas 72024
Dear Senator Glover:
I am writing in response to your request for an opinion on several questions involving a possible general obligation bond issue to fund repair or replacement of existing public school facilities. Specifically, you note that "the General Assembly is under a Supreme Court order to provide substantially equal and adequate school facilities in every district." You further note that the "General Assembly has appropriated ten million dollars to conduct a statewide assessment of some 5,700 public school facilities in Arkansas, encompassing 80 million square feet of space." You then state that: "[w]hen the assessment is complete, the General Assembly will undoubtedly be facing a formidable task in raising the revenue that will be required in building new school facilities or reconstructing existing buildings." Assuming the General Assembly determines that the way to pay for the building of new school facilities or reconstructing existing buildings is through the issuance of general obligation bonds, you raise several questions, as follows:
 1. Is the repair and replacement of inadequate and unequal school facilities a financial obligation of the local school district, or is it an obligation of the State of Arkansas?
 2. If the financial obligation is on the State of Arkansas to repair and replace inadequate and unequal school facilities in all the school districts, may the General Assembly, subject to a statewide vote of the electorate, propose a measure that would allow for the State of Arkansas to issue general obligation bonds to finance such an undertaking? Can such a proposal be done legislatively or would there have to be a constitutional amendment proposed and adopted to accomplish such a proposal?
 3. If a proposal is before the electorate that would allow for the State of Arkansas to issue general obligation bonds to finance the repair and replacement of inadequate and unequal school facilities and it is subsequently turned down by the voters, under what posture would the General Assembly find itself? Would we be obligated to provide funding from other revenue sources to pay for the repair and replacement of these school facilities?
RESPONSE
It is my opinion, in response to your first question, that it is ultimately the State's duty to ensure an "equal educational opportunity," including substantially equal facilities, to Arkansas children. If local districts do not provide such facilities, the State may compel them to do so, or in my opinion, the State may itself act to secure them. In my opinion the answer to your second question is "yes," the State may propose such a bond measure to the electors, assuming the practicalities of funding such a bond issue could be surmounted. In my opinion a constitutional amendment is not necessary to authorize such a bond issue. In answer to your third question, if the voters turned down such a bond issue, in my opinion the State would be obligated to fund the necessary school facilities from some other source. The answer to your third question is therefore "yes."
Question 1 — Is the repair and replacement of inadequate and unequalschool facilities a financial obligation of the local school district, oris it an obligation of the State of Arkansas?
It is my opinion that it is ultimately the State's duty to ensure an "equal educational opportunity" to children in Arkansas. See Lake ViewSchool District No. 25 v. Huckabee, 351 Ark. 31, 78, 91 S.W.3d 472 (2002) ("It is the General Assembly's constitutional duty, not that of the school districts, to provide equal educational opportunity to every child in this state"). Id. at 78. "Equal educational opportunity" must include as basic components "substantially equal curricula, substantially equal facilities, and substantially equal equipment for obtaining an adequate education." Id. at 79. As the Lake View court noted "[i]t is the State's responsibility to provide an equal education to its school children and, as we said in DuPree [v. Alma School Dist. No. 30, 279 Ark. 340,651 S.W.2d 90 (1983)], "[i]f local government fails, the state government must compel it to act." 279 Ark. at 349, 651 S.W.2d at 95 (quotingRobinson v. Cahill, supra)). Id. at 78-79. In its most recent decision (Lake View School District No. 25 of Phillips County v. Huckabee, etal., (Ark.Sup.Ct. 01-836, June 18, 2004)), the court, in releasing jurisdiction, stated that "[a]dmittedly, some measures, and specifically funding measures and those relating to facilities and equipment, have not been brought to fruition. But we presume they will be. . . ." Id. at 29.
The State must therefore ultimately ensure substantially equal school facilities. If local districts do not provide such facilities, the State may compel them to do so, or in my opinion, the State may itself act to secure them.
Question 2 — If the financial obligation is on the State of Arkansas torepair and replace inadequate and unequal school facilities in all theschool districts, may the General Assembly, subject to a statewide voteof the electorate, propose a measure that would allow for the State ofArkansas to issue general obligation bonds to finance such anundertaking? Can such a proposal be done legislatively or would therehave to be a constitutional amendment proposed and adopted to accomplishsuch a proposal?
It is my opinion that the answer to the first part of this question is "yes." The General Assembly may propose the issuance of general obligation bonds to fund such facilities, which issuance must be approved by a vote of the electorate. In my opinion such a proposal would not necessarily require a constitutional amendment.
As noted above, the Arkansas Supreme court has made plain that it is the State's ultimate duty to provide equal educational facilities to Arkansas school children. The General Assembly, in fulfilling this duty, is invested with all legislative power not denied it by the Arkansas or United States Constitutions. In this regard, it is generally held, as a canon of state constitutional construction, that a state constitution is not a grant of enumerated powers to a state general assembly, but is rather a limitation on the power of a general assembly to act. See,e.g., Erxleben v. Horton Printing Co., 283 Ark. 272, 675 S.W.2d 638
(1984); Wells v. Purcell, 267 Ark. 456, 592 S.W.2d 100 (1979); Jones v.Mears, 256 Ark. 825, 510 S.W.2d 857 (1974); and Berry v. Gordon,237 Ark. 547, 376 S.W.2d 279 (1964). That is, the legislature has absolute power to legislate in all fields unless it is expressly or by necessary implication denied that power by the Arkansas or United States Constitution. Id.
Your question is whether the General Assembly has the power to issue general obligation bonds, subject to a vote of the electorate, to fund repair and replacement of inadequate or unequal school facilities. No provision of the Arkansas or United States Constitutions denies the General Assembly the power to issue general obligation bonds for such purposes and, as a consequence, the General Assembly is invested with such power. The legislature's power over the funding of school districts is clear. See Arkansas Constitution, art. 14, §§ 1 and 3, respectively ("[i]ntelligence and virtue being the safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free public schools and shall adopt all suitable means to secure to the people the advantages and opportunities of education . . ." and "[t]he General Assembly shall provide for the support of the common schools by general law . . ."). The Arkansas Supreme Court in the Lake View decision has left no room for doubt as to the State's power or duty in this regard. Assuming, therefore, that the practicalities of funding such a bond issue could be addressed, it is within the legislature's power to propose such a bond issue.
One point should be noted, however, regarding your mention of an election to authorize such a bond issue. This point is also related to the second part of your second question, regarding whether a constitutional amendment is required to implement such a bond issue.
In my opinion, although the General Assembly has the power to pass a legislative act proposing a bond issue of the sort you describe, the issuance of the bonds must be approved by a vote of the electorate under the provisions of Amendment 20, which provides in pertinent part as follows:
 Bonds prohibited except when approved by majority vote of electors. — Except for the purpose of refunding the existing outstanding indebtedness of the State and for assuming and refunding valid outstanding road improvement district bonds, the State of Arkansas shall issue no bonds or other evidence of indebtedness pledging the faith and credit of the State or any of its revenues for any purpose whatsoever, except by and with the consent of the majority of the qualified electors of the State voting on the question at a general election or at a special election called for that purpose.
The term "general obligation" bonds, referred to in your question, describes bonds to which the full faith and credit of the State is typically pledged. The general obligation bond issue you describe would thus require a vote of the electorate.
Your question is whether the issuance of such bonds would also necessarily require the passage of a constitutional amendment. It is my opinion that the answer is "no." Ordinarily, the General Assembly is prohibited from referring matters to the people for their approval or rejection at an election, except constitutional amendments. This prohibition is contained in Arkansas Constitution, Amendment 7 (the "Initiative and Referendum Amendment"), "General Provisions" "Majority," as follows:
 This section shall not be construed to deprive any member of the General Assembly of the right to introduce any measure, but no measure shall be submitted to the people by the General Assembly, except a proposed constitutional amendment or amendments as provided for in this Constitution.[1]
This provision, at first blush, appears to require the General Assembly to refer a constitutional amendment to the people anytime it seeks their approval or rejection of a particular matter. Later amendments to the Arkansas Constitution, however, have made exceptions to this prohibition. As noted in Op. Att'y Gen. 2000-327:
 Of course, since the adoption of Amendment 7, several constitutional provisions have been adopted which require an affirmative vote of the people in certain instances. Most notable among these are: Arkansas Constitution, Amendment 19 (codified at art. 5, § 38) (requiring a super-majority vote of the General Assembly or approval of the qualified electors in order to increase certain taxes levied at the time of passage of Amendment 19); [footnote omitted] Amendment 20 (requiring an affirmative vote of the people prior to the issuance of bonds or evidences of indebtedness pledging the faith and credit of the state or any of its revenues); Amendment 65, § 2(b) (which would require a popular vote for revenue bonds issued for certain types of projects); and Amendment 74(b)(4) (authorizing the General Assembly to by law propose an increase or decrease in the uniform rate of tax levied in school districts and to submit the question to the electors of the state). These provisions give constitutional sanction to legislative acts referring the stated issues to a vote of the people.
Id. at 8. (Emphasis added).
Amendment 20 does not require the passage of a constitutional amendment to obtain the voters' consent. It merely requires the "consent of the majority of the qualified electors of the state voting on the question. . . ." See Amendment 20, supra. Thus, a constitutional amendment to authorize such a bond issue is not required, assuming, of course, that any attendant funding to retire the bond issue can be raised without the necessity of a constitutional amendment. A statewide vote of the electorate is required, however, for such a bond issue. The approval of the general obligation school bonds you describe would in this regard be similar to the recent highway bond issue approved by the voters (see A.C.A. §§ 27-64-201 to -214 (Supp. 2003) (the "Arkansas Highway Financing Act of 1999"), which was authorized by legislative act, which act in turn required the bond issuance to be approved by the people as contemplated by Amendment 20. See A.C.A. § 27-64-206 (Supp. 2003).
Question 3 — If a proposal is before the electorate that would allow forthe State of Arkansas to issue general obligation bonds to finance therepair and replacement of inadequate and unequal school facilities and itis subsequently turned down by the voters, under what posture would theGeneral Assembly find itself? Would we be obligated to provide fundingfrom other revenue sources to pay for the repair and replacement of theseschool facilities?
In my opinion if the voters turned down a general obligation bond issue to fund court-ordered improvements to school facilities, the State's duty to comply with the Arkansas Supreme Court's order would remain. In my opinion, therefore, the answer to your third question is "yes," the General Assembly would be obligated to either require school districts to pay to repair or replace any required facilities or to itself provide funding from other sources to comply with the court's order.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] The General Assembly's power to propose constitutional amendments for the people's adoption or rejection is found at Arkansas Constitution, art. 19, § 22.