Charles H. BAHIL et al *v.*
Calvin T. SCRIBNER

79-3                                    581 S.W. 2d 334

Opinion delivered May 29, 1979
(In Banc)

*Catlett & Henderson,* by: *Leon B. Catlett;* and *Wilson, Dougherty & Mills, P.A.,* by: *Mike Wilson,* for appellants.

*Solloway & Jackson, P.A.,* by: *Cliff Jackson,* for appellee.

FRANK HOLT, Justice. These seven appellants were, at various times, appointed as delinquent tax collectors in Pulaski County. As compensation until January 1, 1977, they received certain fees based upon a percentage of the penalty imposed for delinquent taxes. Act 342 of 1941 (Ark. Stat. Ann. §§ 84-1006 — 84-1010 [Repl. 1960]). In April, 1977, appellee brought this taxpayers' action contending that the compensation received by appellants from November 4, 1974, until December 31, 1976, was prohibited under Amendment 55 to the Arkansas Constitution. This Amendment was approved on November 4, 1974. Appellee sought an accounting and restitution of $442,450.00 as tax funds to Pulaski County. Appellants' demurrer was overruled; they answered, and the chancellor, after a hearing on the merits, held that the facts preponderated in favor of holding that the apppellants were "officers or employees" of the county within the meaning of Amendment 55, which prohibited the further payment of fees as compensation for those appellants. The court, however, held that Amendment 55 was not self-executing and, therefore, appellants were not prohibited from receiving fees as compensation from November 4, 1974, (date of adoption) to January 1, 1975. Effective the latter date, enabling legislation was enacted, Act 127 of 1975 (Ark. Stat. Ann. § 12-1740 [Supp. 1977]), which prohibited the receipts of fees by county officials as compensation after January 1, 1975. Consequently, the court ordered appellants to account for the fees received by them from January 1, 1975, until December 31, 1976, and to make restitution for those fees after taking credit for their expenses. The chancellor, however, allowed them com-

pensation for this period of time based on 1/12 of their net compensation for the calendar year 1974, citing Act 131 of 1975. The judgments against appellants varied individually and totalled $97,363.95.

Appellants first assert that the chancellor erred in holding that they were, as a matter of fact and law, officers or employees of Pulaski County. The appointment of delinquent tax collectors was authorized in Act 342 of 1941 as amended. § 1 of that Act provides in part:

> The County Judge, the Mayor of the municipality that is the county seat . . . and the Chief County School Officer of each of the counties of this State are hereby constituted a Board to be known as the 'Delinquent Tax Board.' It shall be the duty of said Board to appoint . . . collectors, of delinquent personal taxes for its respective county, and to supervise and direct the . . . collectors, appointed by them.

§ 5 provides that the delinquent tax collectors are entitled to certain fees as compensation for the delinquent taxes collected by them.

Amendment 55 to the State Constitution, approved on November 4, 1974, provides in pertinent part:

> §5: Fees of the office shall not be the basis of compensation for officers or employees of county offices.

Appellants argue that they have never been employees or officers of the county but are, rather, appointees of the Delinquent Tax Board, citing Act 342 of 1941, *supra*. As noted by the chancellor, the constitutionality of this Act, providing for the appointment of delinquent tax collectors, was tested in *Newton* v. *Edwards*, 203 Ark. 18, 155 S.W. 2d 591 (1941). The statute was upheld. There we said:

> Apparently the purpose of Act 342 is to collect taxes that are due and cannot be collected in the ordinary way . . . The legislature evidently thought that if a separate collector was appointed for the sole purpose of

collecting delinquent personal taxes, much more money would be derived than under the present system.

Here, in relying on that case, the chancellor held:

> The opinion in the Newton County Judge case, supra, is based upon the premise that a delinquent tax collector is an officer of the county under the provision of Article 7, Section 46. This legal precedent has not been questioned since 1941.

Also, the chancellor observed that the mutual relationship of county offices becomes apparent when the collection scheme is examined:

> The delinquent tax collectors are appointed by the Board for 'its respective county' (Ark. Stat. Ann. § 84-1006 and see also Ark. Stat. Ann. § 84-1007). After the taxes have been levied and assessed the county collector adds 10% penalty to the taxes of the delinquent taxpayer (Ark. Stat. Ann. § 84-1001). The county collector then gives to the county clerk the list of delinquents. The county clerk then causes a notice to be run in a newspaper having a general circulation in the county (Ark. Stat. Ann. § 84-1003). The county clerk then gives to the delinquent tax collectors a list of the delinquent taxes with the delinquent tax fees added. (Ark. Stat. Ann. § 84-1008). The delinquent tax collectors then collect taxes within the county and make weekly settlements to the county clerk and pay to the County Treasurer all funds collected less the collectors' fees (Ark. Stat. Ann. § 84-1011).

As to the facts, the chancellor found:

> The facts in this case preponderate in favor of holding that defendants are county officers or employees. The defendants conducted their operations out of the county courthouse. The county supplied their office space and utilities. Their bonds were payable to the county. The county paid the employer's part of their social security payments, and the county paid the employer's part of their State retirement payments. It is

inconsistent for the defendants now to argue they are not employees or officers of the county, as they have received benefits as employees.

Here we cannot say the chancellor's finding is against the preponderance of the evidence, nor contrary to the law, that appellants are county officers or employees within the meaning of Amendment 55.

Appellants further contend that the court erred in finding that Act 342 of 1941 was impliedly repealed by Act 127 of 1975. Act 127 of 1975 provides, in pertinent part:

Section 1. (a) From and after January 1, 1975, fees of the office shall not be the basis of compensation for officers or employees of county offices.

Section 6. All laws . . . in conflict with the provisions of this Act are hereby repealed to the extent of such conflict.

Act 342 provided that county delinquent tax collectors were to be paid from the fees they collected in their official capacity. Act 127, enabling legislation to Amendment 55, provides that no county officers or employees shall be compensated through such a system. Act 342 and Act 127 are plainly in direct conflict. The chancellor was correct in finding that Act 127 repealed Act 342.

Appellants also assert that they acted in good faith in collecting an aggregate of $1,819,203.32 in delinquent taxes and, relying upon *Martindale* v. *Honey*, 261 Ark. 708, 551 S.W. 2d 202 (1977), argue that they should not be required to make restitution from their fee compensation, even if its payment was illegal. In response, appellee relies upon *Tedford* v. *Mears*, 258 Ark. 450, 526 S.W. 2d 1 (1975), and *Mackey* v. *McDonald*, 255 Ark. 978, 504 S.W. 2d 726 (1974), arguing that those cases were not overruled by *Martindale, supra*, and can be distinguished. We agree. *Martindale* distinguished the two earlier cases, noting that *Tedford* dealt with a "specific constitutional prohibition against an officer receiving emoluments of his office in excess of a stated sum per annum." The prohibition in *Martindale* only prevented a

member of the General Assembly from being lawfully appointed to or elected to a civil office while he serves in the legislature. *Tedford* is more similar to the situation here, which involves a specific constitutional prohibition against receiving any fees of the office as compensation. Accordingly, appellants' assertion of good faith does not provide a sufficient ground to avoid making restitution, as ordered by the chancellor. In addition, the chancellor made no finding as to good faith.

Appellee, on cross-appeal, contends that the chancellor erred in holding that restitution should not be made for the period from November 4, 1974, the date of Amendment 55's adoption, through December 31, 1974. He argues that the Amendment should be interpreted to have mandated the legislature to adopt legislation abolishing the fee system retroactively to the date of the Amendment's adoption. The chancellor held that Amendment 55 was not self-executing and did not abolish the fee system until enabling legislation was enacted, citing *Griffin* v. *Rhoton*, 85 Ark. 89, 107 S.W. 380 (1907). There it was noted that a constitutional provision is not self-executing if it merely "indicates principles, without laying down rules by means of which those principles may be given the force of law." Here, as to Amendment 55, the chancellor noted:

> Section 5 'provided, however, during the interim, from the date of adoption of this Amendment until the first day of the next succeeding month following the date of approval of salaries by the Quorum Court, *salaries of county officials shall be determined by law*. Fees of the office shall not be the basis of compensation.'

Pursuant to this mandate, the legislature enacted Act 127 of 1975, which abolished the fee system as compensation for county officers or employees as of January 1, 1975. It repealed any conflicting acts. Also enacted was Act 131 of 1975 which provides an interim method of no greater than 1/12 per month of 1974 compensation for payment of salaries of county officials until the authority of the quorum courts became effective on January 1, 1977. Act 897 of 1975, Section 4, specifically provides for the salary of the delinquent tax collector after January 1, 1977, as does Section 1 of Act 495 of

1977. As the chancellor found, there was no intent to abolish the office of deliqnuent tax collector, rather only an intent to abolish the fee compensation system. We agree that Amendment 55 was not self-executing since the legislature was empowered by Section 5 to determine interim salaries for county officials. Thus, the chancellor appropriately refused to order restitution for the 2 month period prior to the passage of enabling legislation.

Appellee asserts, for his second point on cross-appeal, that the court erred in applying its method of accounting and restitution. Appellee argues that the chancellor's allowing appellants "1/12 per month of their 1974 fees not only gives them a windfall, but also indirectly continues the fee system for 1975 and 1976." Appellee insists that there should be a repayment of those fees received by appellants in excess of the reasonable value of the benefit and services conferred on Pulaski County. Appellee admits it is within the juridiary's powers of equity to set a fair, reasonable and appropriate level of compensation for these appellants for that period of time. We certainly cannot say that the chancellor's method of accounting and restitution is not fair and reasonable in view of the enabling legislation providing for interim salaries and especially in view of the fact that, through the efforts of these appellants, $1,819,203.32 was collected by them in delinquent taxes.

Finally, appellee contends that he should have been awarded costs and attorney's fees pursuant to Ark. Stat. Ann. § 25-301 (Repl. 1962) and Ark. Stat. Ann. § 84-4601 (Supp. 1977). § 84-4601 provides that the court may award attorney's fees in cases in which the court orders "any county, city or town to refund or return to the taxpayers monies illegally exacted by the county, city or town . . . " Although appellee argues that a refund here to the county treasurer is, in essence, a refund to the taxpayers themselves, the statute clearly applies only to suits brought against counties, cities or towns. It is inapplicable here. Neither is § 25-301 applicable, since it deals with compensation of attorneys by contract between the attorney and client and liens for fees owed.

Affirmed on direct and cross-appeal.

HARRIS, C.J., and BYRD and PURTLE, JJ., would reverse and dismiss.

JOHN I. PURTLE, Justice, dissenting. The appellants had been employed by the Delinquent Tax Board of Pulaski County for several years before the present suit was filed. The Delinquent Tax Board consists of the county judge, the mayor of Little Rock, and a representative from the schools of Pulaski County. The appellants retain a fee from the funds collected and remit the balance to the county treasurer.

The chancellor did an outstanding job in determining the facts and the law in this complicated case. He correctly interpreted the law and applied the facts as they relate to officers or employees of county officers. My disagreement is only as to whether the laws cited apply to appellants. I think not.

It is my feeling that appellants are employees of the cities and towns and various school districts and the county. The county has only a one-third voice in employing or discharging them and the other two-thirds lie with the cities and school districts.

Even if we were to hold appellants were officers or employees of Pulaski County it would not alter my opinion. Admittedly, Amendment 55 is the key to the solution in this matter. Had Amendment 55 not been enacted no problem would exist. However, Amendment 55 required enabling legislation as it was not self-executing. Therefore, the General Assembly was required to enact legislation for execution of the amendment.

Act 127 of 1975, implementing § 5 of Amendment 55, applies to county officers and employees. It specifically applied to certain officers and employees. However, it did not mention the Delinquent Tax Board or delinquent tax collectors. The chancellor held Act 127 included appellants by implication and thereby repealed Ark. Stat. Ann. §§ 84-1006 — 1010 which is Act 342 of 1941.

Following Act 127 of 1975, the General Assembly passed

Act 131 of 1975 which set the manner and method of payment of county officers and their employees until January 1, 1977. The same reasons apply as to whether appellants were included in this act as those set out above for Act 127.

The General Assembly passed Act 897 of 1975 which provides for the salaries of delinquent tax collectors commencing in 1977. This was the first time the General Assembly had made provisions for delinquent tax collectors. The last time the General Assembly had addressed the subject of delinquent tax collectors was Act 342 of 1941 as amended.

Since the General Assembly enacted legislation in 1975 requiring the quorum court to deal with delinquent tax collectors, we know they were aware of the fee arrangement in 1975 and did not see fit to make any change until January 1, 1977, through the process of Act 897 of 1975. We must also presume they were aware of the prior enactment and existence of Act 342 of 1941 as amended.

We have never favored repeal by implication and will not so treat a statute if it can be reconciled with the existing statutes. *Polk* v. *Booker,* 112 Ark. 101, 165 S.W. 262 (1914). It is also well established that statutes existing prior to constitutional amendment will be repealed by implication only if there is irreconcilable conflict or where the statute is repugnant to the constitutional amendment. Repeal by implication, whether by the General Assembly or constitutional amendment, is not favored by the law unless the two provisions simply cannot stand together. *McKenzie* v. *Burris,* 255 Ark. 330, 500 S.W. 2d 357 (1973). We have many times held that an act of the General Assembly is presumed constitutional and therefore will not be held unconstitutional unless there is clear incompatibility between them. In such case, all doubt must be resolved in favor of the legality of the act. *Jones* v. *Mears,* 256 Ark. 825, 510 S.W. 2d 857 (1974). The General Assembly's power is limited only by the constitution. Of course, their actions are subject to the processes of referendum if exercised by the people. We have stated that it is our duty to construe an act as constitutional if it is possible to do so. *Stone* v. *State,* 254 Ark. 1011, 498 S.W. 2d 634 (1973). It seems clear to me that the General Assembly was fully aware

of the existence of Ark. Stat. Ann. §§ 84-1006 — 1010 at all times while they were passing enabling statutes pursuant to Amendment 55. At no time did they address the delinquent tax collectors until the enactment of Act 495 of 1977. However, as previously stated, the quorum court was authorized through Act 897 of 1975 to establish salaries of delinquent tax collectors commencing on January 1, 1977. As I see it, the acts of the General Assembly and the provisions of Amendment 55 are not at all irreconcilable when viewed in the light stated herein. In fact, it seems obvious to me that the General Assembly consciously intended to leave the delinquent tax collectors' salaries as they were until such time as they could address it properly.