The Honorable John W. Parkerson State Representative 300 Exchange Street Hot Springs, AR 71901
Dear Representative Parkerson:
This is in response to your request for an opinion on several questions concerning Arkansas Constitutional Amendment 3 of 1988 ("An Amendment to Prevent Abortion Funding and to Restrict Abortion.") The specific questions posed in this regard are restated as follows:
 1. Does Section 1 of the Amendment mean that institutes receiving a majority of their funds from public monies will be unable to perform abortions, or just that in any specific case the funding will not be provided for by the state?
 2. Is a physician who handles a large volume of Medicaid cases prohibited from performing abortions because he or she does receive State funds, or is the determination made on an individual basis?
 3. Please define the exception contained in Section 1 regarding "to save the mother's life."
 4. Does Section 2, which states that the policy of the State is to protect the life of every unborn child from conception until birth, place the burden of financing of these children on the State? (The Health Department currently provides prenatal care but does not provide for the birth.) If so, to whom do I send the bill?
 5. Please shed some light on Section 3 in light of Section 2, since many contraceptive devices, such as the IUD and even birth control pills, act not to prevent conception but to prevent implantation.
Your first two questions may be addressed together, since they both center of whether the receipt of a large volume of public monies precludes that entity or physician from performing abortions.
It is my opinion that the receipt of public funds is not necessarily dispositive in that the prohibition under Section 1 focuses upon the use of public funds. This Sections states: "No public funds will be used to pay for any abortion except to save the mother's life." The plain meaning of Section 1 suggests that the key inquiry is whether the public funds received by that entity or physician were used "to pay for any abortion", and not merely whether the entity or physician performing abortions receives public funds.
The issue of whether public funds were used involves a factual question, to be resolved based upon the particular facts and circumstances in each instance. There is no presumption created under Section 1 with respect to the physician's receipt of State Medicaid funds. Rather, there must be a showing that the use of the funds contravenes Section 1. If such a showing is made, then the particular physician or entity may, as a practical matter, be unable to perform abortions if the public funds were essential to that practice.
It must be initially notes in response to your third question that a definition of this exception will have to be developed in Arkansas through case law. This office is not in a position to supply a definition where the constitutional provision in question is silent and the Arkansas courts have not yet addressed the matter.
A review of at least one U.S. Supreme Court and one federal district court decision does suggest that a medical judgment must be exercised in this regard in light of all factors — physical, emotional, psychological, familial, and age — relevant to the patient's well-being. See, Doe v. Bolton, 410 U.S. 179 (1973); Woe v. Califano,460 F. Supp. 234 (S.D.Ohio, 1978). While it should be noted that these cases involved statutes specifically requiring a medical judgment, it may reasonably be concluded that medical testimony will be necessary in order to determine whether the exception "to save the mother's life" is applicable under any given set of facts. This will, of course, present a factual question in each case. And at least one court has ruled, in the context of a criminal statute, that the question presents an issue for the jury. Peeple v. Fedora, 393 Ill. 165, 65 N.E.2d 447 (1946).
Your fourth question involves Section 2 of the Amendment which states:
 The policy of Arkansas is to protect the life of every unborn child from conception until birth, to the extent permitted by the federal constitution.
It must be concluded that the answer to your fourth question is "no". While the General Assembly could presumably pass legislation establishing the Health Department's financial responsibility for delivery, as well as prenatal expenses, we cannot conclude from the language of Section 2 that this responsibility is created by Amendment 3 of 1988.
As an initial matter, one may successfully contend that this constitutional provision is not self-executing; rather, legislative action is required in order to effectuate the policy statement. The Arkansas Supreme Court has stated that the "self-executing" question depends upon whether the language indicates that the provision ". . . is intended as a present enactment, complete in itself as definitive legislation, or contemplates subsequent legislation to carry it into effect." Myhand v. Erwin, 231 Ark. 444, 452, 330 S.W.2d 68 (1959), citing, 16 C.J.S. 48, p. 146. The court has repeatedly quoted the following test in making this determination:
 A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.
Cooley's Const. Lim. (7th Ed.), p. 121; see also, Griffin v. Rhoton, 85 Ark. 89, 95 107 S.W. 380
(1907); Myhand v. Erwin, supra, 231 Ark. at 452-453; Bahil v. Scribner, 265 Ark. 834, 840, 581 S.W.2d 334
(1979).
Although there is a presumption of law that every constitutional provision is self-executing, particularly where the provision in question is initiated by the people (Rockefeller v. Hogue,244 Ark. 1029, 1033, 429 S.W.2d 85 (1968)), the general and indeterminate character of the language employed suggests that Section 2 is not self-executing.
Section 3 of the Amendment states, moreover, that "[t]his amendment will not . . . require an appropriation of public funds." This expression of intent further compels the conclusion that the State is not financially obligated in this regard by virtue of the language of Section 2.
In response to your final question, to the extent it can be contended that certain contraceptive devices, such as the IUD and birth control pills, act to prevent implantation following conception, it must be concluded that Section 3 exempts such devices from the operation of Section 2.[1]
The plain meaning of Section 3 compels this conclusion. See, A.G. Op. No. 88-380, copy enclosed.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
STEVE CLARK Attorney General
SC:arb
[1] Section 3 of the Amendment states: "This amendment will not affect contraceptive or require an appropriation of public funds."