Mr. Harold G. Martin 209 Trivista Left Hot Springs, AR 71901
Dear Mr. Martin:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed constitutional amendment. Similar measures have been previously submitted on your behalf, some of which this office rejected due to ambiguities in the text of the proposed amendments. See Ops. Att'y Gen. 2004-086, 2004-061, 2004-038, 2004-004, 2003-026, 2003-008, 2002-346, 2002-335, 2002-325, 2002-308, 2002-293, 2002-272, 2002-227 and 2002-208. On March 6, 2003, this office revised and certified the popular name and ballot title for a similar measure, as evidenced by Op. Att'y Gen. 2003-054. You have since made changes to your measure and have submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT AUTHORIZING BINGO AND RAFFLES BY NON-PROFIT ORGANIZATIONS INCORPORATED IN THE STATE, AUTHORIZING THE GENERAL ASSEMBLY TO OPERATE LOTTERIES AND AUTHORIZING HAROLD GLEN MARTIN TO OPERATE GAMBLING
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING BINGO AND RAFFLES BY NON-PROFIT ORGANIZATIONS INCORPORATED IN THE STATE; AUTHORIZING THE GENERAL ASSEMBLY WITH THE DISCRETION TO CREATE, TAX, LICENSE AND REGULATE A LOTTERY OR LOTTERIES WITH THE STATE-WIDE SALE OF LOTTERY TICKETS TO BE OPERATED BY THE STATE, OR AN AGENCY OF THE STATE THEREOF, WHICH SIGNIFICANTLY CHANGES CURRENT LAWS UNDER ARKANSAS CONSTITUTION ARTICLE 19 SECTION 14 EFFECTING GAMBLING; AUTHORIZING HAROLD GLEN MARTIN TO OPERATE GAMBLING, EMPLOY PERSONS TO OPERATE GAMBLING AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A 24 DAY WITHIN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF CAROLL [SIC], CHICOT, CRAWFORD, CRITTENDEN, BENTON, GARLAND, JEFFERSON, MILLER, MISSISSIPPI, PULASKI AND SEBASTIAN WITH SUCH STRUCTURE LOCATED WITHIN ANY CITY OR TOWN WITHIN THOSE COUNTIES; AUTHORIZING HAROLD GLEN MARTIN, THOSE EMPLOYED AND SUBCONTRACTED TO OPERATE GAMBLING TO SELL AND SERVE ALCOHOLIC BEVERAGES ON ANY DAY FOR THE WHOEL [SIC] OF A 24 DAY ONLY WITHIN THE INTERIOR AREA OF THOSE STRUCTURES USED FOR GAMBLING (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVEREAGES [SIC] IS OTHERWISE PROHIBITED); REQUIRING THE GAMBLING OPERATOR ANNUALLY PAY 8% OF THE PROFIT EARNED FROM EACH GAMBLING OPERATION WITHIN THE STATE TO THE STATE'S GENERAL FUND, 8% OF THE PROFIT EARNED ANNUALLY TO THE COUNTY'S GENERAL FUND IN WHICH GAMBLING IS OPERATED AND 8% OF THE PROFIT EARNED ANNUALLY TO THE CITY'S GENERAL FUND IN WHICH GAMBLING IS OPERATED; AUTHORIZING THE GAMBLING OPERATOR TO DEDUCT ANY, AND ALL, OPERATIONAL EXPENSES TO OPERATE GAMBLING FROM THE GROSS EARNINGS WHICH IS THE TOTAL AMOUNT OF MONEY EARNED FROM GAMBLING AFTER THE DEDUCTION OF MONEY PAID AS A LOSS TO THOSE AS WINNERS TO DETERMINE THE AMOUNT OF PROFIT; AUTHORIZING THE STATE, OR AN AGENCY OF THE STATE THEREOF, TO AUDIT, CALCULATE AND DETERMINE WHICH DEDUCTIONS ARE OPERATIONAL COSTS NECESSARY TO THE OPERATION OF GAMBLING; PROHIBITING THE STATE, OR ANY AGENCY OF THE STATE THEREOF, UNLESS PROVIDED FOR DIFFERENTY [SIC] WITHIN THIS AMENDMENT FROM TAXING THE OPERATION OF BINGO, RAFFLES AND GAMBLING; PROHIBITING THE STATE, OR ANY AGENCY OF THE STATE THEREOF, UNLESS PROVIDED FOR DIFFERENTLY WITHIN THE PROVISIONS OF THIS AMENDMENT FROM REQUIRING A LICENSE, FEE OR PERMIT OF ANY KIND BY ANY NAME TO OPERATE BINGO, RAFFLES AND GAMBLING; EXEMPTING THE TRANSFER OF EACH GAMBLING OPERATION WITH OR WITHOUT SALE FROM APPROVAL BY THE STATE, OR ANY AGENCY OF THE STATE THEREOF; PROVIDING FOR THE LEGAL SHIPMENT OF GAMBLING DEVICES INTO THE STATE; DEFINING" BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN MONEY OR A PRIZE; DEFINING "RAFFLES" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE BUT EXCLUDES MONEY AS A PRIZE; DEFINING "LOTTERY" AS THE TYPICAL FORM OF A LOTTERY CHARACTERIZED BY THE ARKANSAS SUPREME COURT WHICH INVOLES [SIC] THE SALE OF A LARGE NUMBER OF CHANCES RELATIVE TO THE SELECTION OF A SMALL NUMBER OF WINNERS BY A DRAWING DETERMINED BY CHANCE ALONE; DEFINING "GAMBLING" AS THE RISKING OF MONEY BETWEEN TWO OR MORE PERSONS WITH A CONTEST OR GAME OF CHANCE, SKILL OR ANY COMBINATION THEREOF WITH ONE AS WINNER THE OTHER(S) AS LOSER BUT EXCLUDES THE OPERATION OF BINGO, RAFFLES AND LOTTERIES; DEFINING "STRUCTURE" AS ANY KIND AND SIZE OF BUILDING WITH ANY SIZE AND KIND OF ATTACHED ADDITION CONSIDERED ONE STRUCTURE; DEFINING" GAMBLING OPERATOR" AS HAROLD GLEN MARTIN OR THOSE PERSONS, COMPANIES OR COPRPORATIONS [SIC] TO WHICH THE GAMBLING OPERATION IS TRANSFERRED; DEFINING "GAMBLING OPERATION" AS THE AUTHORITY OF THE GAMBLING OPERATOR TO OPERATE GAMBLING, EMPLOY AND SUBCONTRACT ANY INDEPENDNET [SIC] CONTRACTOR(S) TO OPERATE GAMBLING WITH THE SALE AND SERVICE OF ALCOHOLIC BEVERAGES; DEFINING "PROFIT" AS THE AMOUNT OF MONEY PAID TO THE GAMBLING OPERATOR AFTER DEDUCTING ANY, AND ALL, OPERTAIONAL [SIC] EXPENSES FROM THE GROSS EARNINGS WHICH IS THE TOTAL AMOUNT OF MONEY EARNED FROM GAMBLING AFTER THE DEDUCTION OF MONEY PAID AS A LOSS TO THOSE AS WINNERS; THE PROVISIONS OF THIS AMENDMENT SHALL TAKE EFFECT IMMEDIATELY UPON PASSAGE OF THIS AMENDMENT; MAKING THE PROVISIONS OF THIS AMENDMENT SEVERABLE AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. You have completely omitted former Section 1(12) of your proposed amendment after my last rejection in Op. Att'y. Gen. 2004-086, which concluded that it gave rise to several ambiguities. The former Section 1(12) provided that: "The General Assembly, and any agency of the State thereof, shall be prohibited from regulating, restricting, hindering and/or prohibiting in any manner the operation of bingo and raffles, as provided in (1) of this Section, the operation of gambling, as provided in (3) of this Section, or the sale of alcoholic beverages, as provided in (4) of this Section." I concluded that this section was confusing in relation to other provisions in your amendment. There is now no mention in your amendment of the regulatory power of the General Assembly over bingo, raffles and gambling, except for the statement that the "State, or an agency of the state thereof, shall be authorized to audit, calculate and determine which deductions are operational costs necessary to the operation of gambling . . ." (Section 1 (9)), and the prohibition in Section 1(11) against any "license, fee or permit of any kind by any name. . . ." An ambiguity arises in light of the remaining language as to the extent of the regulatory power of the General Assembly. Does the State, the General Assembly, or any political subdivision possess any regulatory authority outside of the stated authority to audit, calculate and determine which deductions are operational costs? As my predecessor stated with regard to a similar issue: "It is generally held . . . as a canon of state constitutional construction, that a state constitution is not a grant of enumerated powers to a state general assembly, but is rather a limitation on the power of a general assembly to act. See, e.g., Wells v. Purcell, 267 Ark. 456, 592 S.W.2d 100 (1979); Jones v. Mears, 256 Ark. 825, 510 S.W.2d 857 (1974); and Berry v. Gordon, 237 Ark. 547, 376 S.W.2d 279
(1964). That is, the legislature has absolute power to legislate in all fields unless it is expressly or by necessary implication denied that power by the Constitution. Id. A question therefore arises as to whether your proposed amendment by "necessary implication" denies the General Assembly the power to pass any laws pertaining to the proposed casinos. If it does, this important fact must be reflected in the ballot title for your measure. Cf. Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990) (where proposed amendment authorizing a lottery and bingo was silent as to checks and balances of other branches of government, and Supreme Court interpreted proposed amendment as prohibiting such checks and balances, that fact must be disclosed in ballot title)." Op. Att'y. Gen. 99-176. As I stated in a previous rejection of one of your submissions, the "General Assembly's power to regulate the activities proposed in your amendment is a core concept
that will give the voters serious ground for reflection. It must be made clear prior to summarization of your amendment in a ballot title for voters." Op. Att'y. Gen. 2004-061. Merely omitting any reference to this important point will not suffice.
 2. This ambiguity is only compounded by the persistent ambiguity in Section 3 of your proposed amendment. As I have stated to you previously, the title of that Section is "Amendment Self-Executing," and yet the text of Section 3 states only that the amendment shall take effect immediately upon passage. As I stated to you in response to your previous submission (Op. Att'y. Gen. 2004-086), this incongruity must be remedied before I can certify a ballot title for your measure.
 3. An additional ambiguity is created by Section 1(9), which invests the "State, or an agency of the State thereof [with the power to] audit, calculate and determine which deductions are operational costs necessary to the operation of gambling. . . ." This power is unclear in light of your definition of "profit" in Section 2(h), which purports to set out a non-exhaustive list of permitted operational costs. Will the state have power, by the adoption of laws or otherwise to deviate from this list of operational costs? Ambiguities arise from the construction of these two subsections together. Additionally, the State's power under Section 1(9) is limited to the audit of the operational costs. There does not appear to be any concomitant authority to audit gross earnings, a term referred to in Section 2(h) of your amendment. If the State is not empowered to audit the gross earnings from which operational costs are deducted in order to determine the "profit" upon which the taxes due to governmental entities are computed, this fact may give the voter serious ground for reflection and must be reflected in a ballot title for your measure.
 4. One additional ambiguity arises from Section 1(3) of your amendment, which escaped my attention in your previous submission. This subsection states: "Authorizing Harold Glen Martin to operate gambling, employ persons to operate gambling and subcontract any independent contractor(s) to operate gambling on any day for the whole of a 24 hour day only within the interior area of not more than one structure within each of the following counties of Caroll [sic], Chicot Crawford, Crittenden, Benton, Garland, Jefferson, Miller, Mississippi, Pulaski and Sebastian with such structure located within any city and town within those counties." (Emphasis added). You have changed the language of the italicized portion of this subsection, which formerly read "with such structure located within those counties or within any city and town within those counties." (Emphasis added). I assume from this change that it is your intention to require gambling operations to be located within the corporate boundaries of a city or town. This fact is somewhat unclear under the text of your proposal, however. If this is your intention, it highlights concerns about your proposal's ambiguous treatment of the regulatory power of political subdivisions, including such matters as municipal zoning.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General
MB:cyh