Mr. Drew Pritt 217 South Valentine Little Rock, AR 72205
Dear Mr. Pritt:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed constitutional amendment. Your popular name and ballot title are as follows:
 Popular Name CREATION OF THE ARKANSAS HOPE EDUCATION LOTTERY Ballot Title THE PASSAGE OF THIS MEASURE WOULD ALLOW THE CREATION OF A STATE-SPONSORED LOTTERY WITH THE MAJORITY OF THE PROCEEDS FROM SALES OF THE LOTTERY TICKETS TO BE DIRECTED TOWARDS THE HIRING AND RETENTION OF TEACHERS AS WELL AS GENERAL IMPROVEMENTS TO ARKANSAS PUBLIC SCHOOLS. THE REGULATION OF THIS LOTTERY WOULD BE BY A COMMISSION APPOINTED BY BOTH THE GOVERNOR AND THE STATE LEGISLATURE
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular name and ballot title reflects our view of the merits of the proposal because this Office has been given no authority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. SeeArkansas Women's Political Caucus v. Riviere, 282 Ark. 463,466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device.Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v.Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v. Hall,229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall,229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v. Riviere,270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988);Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v.McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke.Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71
(1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104
(1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. The first paragraph of your proposed amendment provides as follows: "Arkansas Education Hope Lottery[1] This lottery will be governed by a five member board of trustees to be known as the Arkansas Education Lottery Commission. The commission will be comprised of four members appointed by the General Assembly every two years and a Chairman, appointed every three years by the Governor." Several ambiguities arise from this language. First, it is unclear exactly how the four members of the Commission will be appointed" by the General Assembly." In particular, it is unclear which officers in the General Assembly are authorized to nominate or appoint the Commission members, or whether the details of the method of appointment will be left to the General Assembly itself. Also unclear is when the terms of these new Commission members will begin and whether they may serve an unlimited number of terms. Your proposed amendment does not contain any provisions indicating when the Commission members will begin service or what their qualifications will be. Also unaddressed is whether the General Assembly will retain power to legislate on these matters.
 2. The first sentence of the second paragraph of your proposed amendment states as follows: "[t]he Commission will promulgate rules regulated by the conduct of lottery games offered." Obviously, a syntax error obscures the intention of this sentence.
 3. The second sentence of the second paragraph of your proposed measure states that: "[t]he operation of any lottery game using a video lottery machine is prohibited." The term "video lottery game" is undefined in your measure and it is unclear under your proposed amendment what entity will have the authority to define that term. It may be your intention to authorize only the Arkansas Education Lottery Commission to define that term, but I cannot discern this intention from the current language used. Additionally, again, the power of the General Assembly over the issues delineated in your measure is unclear. As I have previously stated with other lottery and gambling initiatives: "A common deficiency in drafting proposed constitutional amendments relating to lotteries and gambling is a failure to adequately detail the extent of the power of the General Assembly under the proposed amendment." Op. Att'y 2005-089. I also cited and quoted from several earlier ballot title rejections in that opinion, stating that: "`[i]t is generally held . . . as a canon of state constitutional construction, that a state constitution is not a grant of enumerated powers to a state general assembly, but is rather a limitation on the power of a general assembly to act. See, e.g., Wells v. Purcell, 267 Ark. 456, 592 S.W.2d 100 (1979); Jones v. Mears, 256 Ark. 825, 510 S.W.2d 857 (1974); and Berry v. Gordon, 237 Ark. 547, 376 S.W.2d 279
(1964). That is, the legislature has absolute power to legislate in all fields unless it is expressly or by necessary implication denied that power by the Constitution." Id. quoting Op. Att'y. Gen. 2004-112, quoting Op. Att'y. Gen. 1999-176. As I noted in Op. Att'y. Gen. 2004-112 with regard to the proposed measure at issue therein: "A question therefore arises as to whether your proposed amendment by `necessary implication' denies the General Assembly the power to pass any laws pertaining to the proposed casinos. If it does, this important fact must be reflected in the ballot title for your measure. Cf. Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990) [footnote omitted] (where proposed amendment authorizing a lottery and bingo was silent as to checks and balances of other branches of government, and Supreme Court interpreted proposed amendment as prohibiting such checks and balances, that fact must be disclosed in ballot title)." Id. I also noted in that opinion that: ". . . the General Assembly's power to regulate the activities proposed in your amendment is a core concept that will give the voters serious ground for reflection. It must be made clear prior to summarization of your amendment in a ballot title for voters." Id., quoting Op. Att'y. Gen. 2004-061. "Merely omitting any reference to this important point will not suffice." Id. Similar conclusions apply to your measure.
 4. The remainder of your proposed constitutional amendment addresses the distribution of the proceeds of the lottery. Your amendment first states in this regard that: "[t]he Commission will set the percentage, but not to exceed 35% of the gross proceeds from the lottery that will be made available as prize money. For the first two years of operations, at least 40% of the net proceeds will be deposited in the Arkansas Education HOPE Lottery Trust Fund to be used for the specific purposes and programs, with the amount increasing to 50% for the third year, until finally 60% in the fourth year and ever thereafter." Your measure also states that: "[e]very year that the lottery is in existence, the first $500,000 of the net proceeds are to be deposited with the Department of Human Services[2] for the treatment of compulsive gambling disorders" and that "[t]he Arkansas Education Lottery Commission is to be funded by no more than 7% of the net proceeds of the Arkansas Education Lottery at any time. No General Revenue Funds are to be used to pay the expenses of the Commission or prizes of the lottery." Several ambiguities arise from this language. First, I assume that the "Arkansas Education Hope Lottery Trust Fund" must be created by the General Assembly, presumably as a fund in the state treasury, although this is not clearly stated in your measure. Second, your measure also refers to, but does not define "net proceeds." It appears that your intention may be to define this term as the gross proceeds minus any moneys awarded as prizes, but this is not clearly specified in your measure. Uncertainty on these points may give voters" serious ground for reflection." Third, your measure does not appear to allocate all of the potential "net proceeds" collected after the award of prizes. You have allocated seven percent of the "net proceeds" for operation of the Commission and ultimately sixty percent of the "net proceeds" to the Trust Fund annually. An additional $500,000 will come off the top annually for the treatment of gambling disorders. Questions arise as to where the rest of the proceeds will be deposited and how they will be used. If, as it appears, you intend to define "net proceeds" as all amounts remaining after the award of prizes, then 100% of the "net proceeds" are not accounted for by your measure. Fourth, the statement in your proposed measure that the Arkansas Education Lottery Commission is to be funded by "no more than 7% of the net proceeds . . . at any time" is confusing. Is this to be an annual calculation? The words "at any time" create confusion in this regard.
 5. Your proposed measure states, with regard to the funds deposited into the Arkansas Education HOPE Lottery Trust Fund (the 40%; 50% or 60% of the "net proceeds" of the lottery, depending on the year of operation), that the "State Treasurer is required to appropriate the revenue in the fund in the following manner. . . ." Your measure then delineates the various purposes to which these amounts are allocated, including certain educational purposes, Quiz Bowl and gifted and talented programs, a scholarship program and the Teacher's Retirement Fund. The use of the word "appropriate" in this sentence, in relation to the "State Treasurer" being required to "appropriate" the revenue in the fund, is confusing. The Arkansas Constitution provides that "[n]o money shall be drawn from the treasury except in pursuance of specific appropriation made by law,
the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents. . . ." Arkansas Constitution, art. 5, § 29. (Emphasis added). See also art. 16, § 12 ("[n]o money shall be paid out of the treasury until the same shall have been appropriated by law; and then only in accordance with said appropriation." (Emphasis added). A question arises in this regard as to whether your proposed constitutional amendment would obviate the necessity of an appropriation" by law" (meaning through action of the General Assembly), and instead authorize the State Treasurer to disburse the funds from the State Treasury without an appropriation. This point may give the voters serious ground for reflection. An additional question may arise as to whether the State Treasurer's action in this regard must be on an annual basis, a biennial basis or some other basis.
 6. The next to last paragraph of your proposed amendment states that: "The Auditor of State is required to annually examine the appropriations from these funds to determine if these appropriations are used to supplant instead of enhance education funding. The Auditor of State is also charged to annually examine the Arkansas Education Lottery Commission to make sure the funds are being dispersed as prescribed by law." With regard to the first sentence above, although it requires the Auditor to determine whether the funds are being used to "supplant" education funding, the language of your measure itself does not directly prohibit the supplanting of education funding. The intention of this requirement is therefore unclear. In addition, the reference to "these funds" in this sentence is unclear. Is the Auditor's authority limited to moneys in the Arkansas Education HOPE Lottery Trust Fund or does it include all funds collected from lottery operations? With regard to the second sentence above, which refers to the Auditor's examination of the Lottery Commission to ensure that "the funds" are being "dispersed as prescribed by law," again a question arises as to the particular funds in question. Although your measure provides for deposit of certain funds in the Arkansas Education Lottery Trust Fund, this fund will not contain all the proceeds from lottery operations and your measure does not specify where other funds will be deposited. In short, your measure is unclear as to where the gross proceeds from the lottery are deposited, whether they must be appropriated by the General Assembly, and who is charged with their maintenance and disbursal. I cannot certify a popular name and ballot title for this measure without clarification of these important issues.
 7. The final sentence of the next to last paragraph of your measure states that: "The Attorney General has the power, upon advisement of the Auditor of State, and with consent of the State Legislature to suspend or terminate the Arkansas Education Lottery if it violates the purposes of why it was set up." This language gives rise to several ambiguities. An initial question arises as to the phrase "upon advisement of the Auditor of State. . . ." The term "advisement" ordinarily means "careful deliberation or consideration; consultation." Random House Webster's Unabridged Dictionary, (2nd Ed. 2001) at 30. I am uncertain how to interpret your use of the phrase "upon advisement" in context of your proposed measure. Must the Auditor of State initiate or agree with the decision to terminate the lottery or may the Attorney General exercise his power after mere consultation with the Auditor? If the lottery is "suspended" for a period of time, upon whose authorization may it be restarted? Questions will arise in the event the Lottery is terminated as to the continued terms of service of the Commissioners and the disposition of any remaining funds and property of the Commission. Again, your measure does not indicate whether the General Assembly will retain authority to legislate upon such matters. Finally, questions may arise as to whether the Attorney General and the General Assembly possess unlimited discretion as to whether the Lottery "violates the purposes of why it was set up." It is unclear whether some type of audit exception or financial irregularity must precede the exercise of this power.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34
(1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Robertsv. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title.See A.C.A. § 7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General
MB/cyh
Enclosure
[1] I will note that the inclusion of the word "Hope" in your proposed popular name, lends partisan coloring to the merits of the proposal and will have to be substituted before certification of a popular name for your measure.
[2] I assume this reference should be to the "Arkansas Department of Health and Human Services." See Act 1954 of 2005 and A.C.A. § 25-10-101 (Supp. 2005).